IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:21CV584 |
| | ) | |
| $25,325.00 IN U.S. CURRENCY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

The United States of America (the "Government") initiated this *in rem* civil forfeiture proceeding on July 16, 2021, pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C) for the forfeiture of $25,325.00 in U.S. Currency ("defendant currency"). (ECF No. 1.) On August 19, 2021, Augustine Perez and DeAnna Coleman ("claimants") filed verified claims as to the defendant currency. (ECF Nos. 6; 7). Before the Court is claimants' *pro se* filing,[1] filed on September 7, 2021, and described as a Joint Motion to Dismiss Complaint, Quash Warrant of Arrest, Suppress Evidence, and Return Property. (ECF No. 10.) For the reasons stated herein, claimants' motion will be denied.

**I.      BACKGROUND**

Attached to the Government's Complaint is the declaration of Drug Enforcement Agency ("DEA") Task Force Officer Adam D. Mosqueda, (ECF No. 1-1), which includes a

---

[1] Claimants appear pro se so their motion "is to be liberally construed" and "must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)).

detailed recitation of the events leading up to the search of claimants' residences by the Rockingham County Sheriff's Office and U.S. probation officers resulting in the seizure of the defendant currency. The declaration alleges the following facts:

In January 2021, claimant Augustine Perez was on supervised release, stemming from past drug-related convictions.[2] (ECF No. 1-1 ¶ 6.) One condition of the supervised release required Perez to submit his "person and property" to warrantless searches and seizures upon reasonable suspicion of controlled substances or paraphernalia. (*Id*.; ECF No. 13-1 at 4.) Perez was required to notify other occupants of his residence that the residence could be subject to warrantless search. (ECF No. 1-1 ¶ 6.)

On January 4, 2021, personnel from the Rockingham County Sheriff's Office collaborated with U.S. probation officers at Reidsville Police Department on a joint operation. (*Id.* ¶ 7.) Probation officers planned to conduct searches of two residences in Rockingham County, both understood to be residences of Perez. (*Id.*) Probation officers had received information from a confidential reliable source and conducted follow-up investigative efforts, leading them to reasonably believe Perez was living at 140 Teal Drive, Reidsville, North Carolina, even though his address was listed as 721 Lawndale Drive, Reidsville, North Carolina. (*Id.*)

That same day, officers searched 721 Lawndale Drive. (*Id.* ¶ 8.) During the search, Perez returned to the property, and a K-9 alerted on the vehicle Perez was operating. (*Id.* ¶¶ 8–9.) A trap compartment, which is typically used to store and transport narcotics, was in the

---

[2] In the Western District of Virginia, on March 15, 1991, Perez was convicted of conspiracy to possess with intent to distribute cocaine, conspiracy to distribute cocaine, continuing criminal enterprise, distribution of cocaine, possession with intent to distribute cocaine, possession with intent to distribute cocaine on public school property, distribution of crack cocaine, and carrying firearms during a drug transaction. (ECF No. 1-1 ¶ 6.)

2

vehicle. (*Id.* ¶ 9.) Probation officers also located prescription bottles inside the 721 Lawndale Drive residence, which had labels with the 140 Teal Drive address on them. (*Id.* ¶ 10.)

Probation officers and Rockingham County Sheriff's Office personnel then began a probationary search of 140 Teal Drive. (*Id.* ¶ 11.) Claimant DeAnna Coleman, who identified herself as the girlfriend of Perez, resided at the address and was present for the search. (*Id.* ¶ 12.) When officers searched the kitchen, they found a white-powder substance within a "false container in a lemonade container," as well as larger quantities of the white-powder substance in a hidden compartment in the kitchen cabinet. (*Id.* ¶ 13.) Based on their training and experience, the officers believed the substance to be cocaine. (*Id.*)

Rockingham County Sheriff's Office Detective Underwood asked Coleman for consent to further search the residence. (*Id.* ¶ 14.) Coleman did not consent, so Detective Underwood obtained a search warrant to look for cocaine, drug paraphernalia, packaging materials, written documents recording drug transactions, computer records and equipment relating to drug transactions, containers commonly used to store controlled substances, as well as weapons, and U.S. currency. (*Id.*) The warrant also authorized a search for telephone numbers, bank accounts, keys, bills, invoices, mail, and other paper documents showing ownership or control of the residence and vehicles, as well as cellphones and telephone recording devices used to facilitate the sale of controlled substances, telephone numbers of persons involved in the violations of controlled substances laws, among other things. (*Id.*)

Rockingham County Sheriff's Deputy Terry Gautier brought his drug-sniffing K-9 to assist with execution of the warrant. (*Id.* ¶ 17.) The K-9 indicated a positive alert on approximately one gram of cocaine and two grams of heroin inside Perez's bedroom at 140 Teal Drive. (*Id.* ¶ 18.) In the same room, officers found U.S. currency hidden behind a vanity

3

mirror and behind a bathroom door. (*Id.* ¶ 19.) The currency was packaged in rubber bands, and the portion found behind the vanity mirror was "banded" in $1,000 increments. (*Id.*) According to DEA Officer Mosqueda, it is a common practice for drug traffickers to "band" currency in that manner. (*Id.*) Detectives also found an old passport for Perez, along with several pill bottles with Perez's name and mail addressed to Perez at 140 Teal Drive. (*Id.* ¶ 20.)

Other items seized from the 140 Teal Drive residence included multiple handguns, ammunition, additional bags of a white-powder substance, 195 oxycodone hydrochloride pills, digital scales, a paper ledger recording names and large amounts of currency, a money bag, multiple cell phones, tablets, computers, as well as a money counter. (*Id.* ¶ 21.)

Detective Underwood charged Perez with possession with intent to supply and distribute cocaine and heroin and possession of a firearm by a felon. (*Id.* ¶ 23.) Coleman was not charged. (*Id.* ¶ 24.) Detective Underwood transported the currency seized during the search to the Rockingham County Sheriff's Office, where it was counted and determined to be $25,325.00. (*Id.* ¶ 26.)

On January 5, 2021, DEA Officer Mosqueda and DEA Special Agent David Webster picked up and transported the seized currency and placed it in temporary high-value evidence at the DEA Greensboro Resident Office. (*Id.* ¶ 27.) On January 7, 2021, Special Agent Webster and Officer Mosqueda transported the currency to the Loomis branch in Durham, North Carolina. (*Id.* ¶ 28.) The following day, the currency was counted and deposited electronically via Loomis to the U.S. Marshal Seized Assets Deposit Fund. (*Id.*)

After the DEA adopted the seizure of the $25,325.00, it initiated an administrative forfeiture proceeding. (*Id.* ¶ 29.) On March 15 and 17, 2021, claimants Coleman and Perez

4

filed administrative claims to the defendant currency. (*Id.*) The administrative forfeiture process was later terminated and referred to the U.S. Attorney for judicial forfeiture. (*Id.*)

On July 16, 2021, the Government initiated this *in rem* civil forfeiture proceeding for the forfeiture of the $25,325.00, which was furnished or intended to be furnished in exchange for a controlled substance, in violation of the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.*, or represent proceeds traceable to such an exchange, or were used or intended to be used to facilitate violation of the Controlled Substance Act. (ECF No. 1.)

On September 7, 2021, claimants filed a Joint Motion to Dismiss Complaint, Quash Warrant of Arrest, Suppress Evidence, and Return Property regarding the defendant currency. (ECF No. 10.) Claimants raise over a dozen arguments contesting the forfeiture, including defects with the Complaint, defects with the search warrant and how it was executed (along with other Fourth Amendment violations), disputes as to what the warrantless search provision of Perez's supervised release permitted, as well as due process violations. (ECF No. 11 at 6–19.) The Court will address each argument in turn.[3]

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) is meant to "test[] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[3] Claimants also assert that the officers improperly seized property beyond the $25,325.00 at issue in this forfeiture proceeding, including several items of jewelry and an additional $4,445.00. (ECF No. 11 at 3.) That claim, however, is not properly before the Court. Claimants must file a separate action pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure if seeking recovery of property *beyond* the $25,325.00 in currency involved in the present matter.

5

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the nonmoving party's favor, *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

III. **DISCUSSION**

A. **Sufficiency of the Complaint**

Claimants first argue that the Government's Complaint and the accompanying affidavit by DEA Officer Mosqueda "amount[] to nothing more than self-serving conclusory conclusions." (ECF No. 11 at 6.) Specifically, claimants argue that the Complaint fails to trace the defendant currency to a specific exchange concerning a controlled substance. (*Id.*) As a result, claimants argue, the Complaint fails to "meet the heighter [sic] particularity required under Rule E(2)(a)" of the Supplemental Rules for Certain Admiralty and Maritime Claims. (*Id.* at 6–7.)

Rule G(2) of the Supplemental Rules for Certain Admiralty and Maritime Claims sets out the pleading requirements for a complaint in a civil forfeiture proceeding. Those requirements include that the complaint:

(a) be verified;
(b) state the grounds for subject-matter jurisdiction, in rem jurisdiction over the defendant property, and venue;
(c) describe the property with reasonable particularity;
(d) if the property is tangible, state its location when any seizure occurred and—if different— its location when the action is filed;
(e) identify the statute under which the forfeiture action is brought; and
(f) state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.

6

Supplemental Rule G(2). The Government's burden of proof at trial is to prove that the defendant property is subject to forfeiture by a preponderance of the evidence. 18 U.S.C. § 983(c)(1). However, "[n]o complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish forfeitability of the property." *Id.* § 983(a)(3)(D).

Furthermore, the Government need not trace the defendant currency to specific alleged transactions. The Fourth Circuit has made clear that "[c]ircumstantial evidence of drug transactions is sufficient to support the establishment of probable cause in a forfeiture proceeding." *United States v. Thomas*, 913 F.2d 1111, 1117 (4th Cir. 1990) (quoting *United States v. $93,685.61 in U.S. Currency*, 730 F.2d 571, 572 (9th Cir. 1984)). It is not necessary to show a "direct connection between the property subject to seizure and the illegal activity that renders the items forfeitable." *Id.* (quoting *United States v. Edwards*, 885 F.2d 377, 390 (7th Cir. 1989)).

Here, the Complaint and attached declaration allege sufficient facts that the defendant currency was involved in drug activity in violation of federal law. DEA Officer Mosqueda's declaration provides several details, including:

- The defendant currency was found in Perez's bedroom at 140 Teal Drive, hidden behind a vanity mirror and bathroom door. (ECF No. 1-1 ¶ 19.) The same bedroom also contained cocaine and heroin. (*Id.* ¶ 18.)
- The search of 140 Teal Drive also produced several firearms, ammunition, several bags of a white-powder substance (suspected to be fentanyl), almost 200 hundred oxycodone pills, digital scales, a safe containing bags and gloves, a paper ledger recording names and large amounts of currency (suspected to be a drug ledger), and a money counter. (*Id.* ¶ 21.)
- The defendant currency was "banded" in a manner that is common practice among drug traffickers. (*Id.* ¶ 19.)

7

The Court is satisfied that these facts support "a reasonable belief that the government will be able to meet its burden of proof at trial." Supplemental Rule G(2)(f). This is also supported by the fact that the Court has already entered a finding that the verified complaint and the declaration of Officer Mosqueda established probable cause for forfeiture of the defendant currency. (ECF No. 3.)

B. **Supervised Release Warrantless Search Condition**

Claimants next argue that Perez's supervised release condition did not permit the search of 140 Teal Drive. (ECF No. 11 at 7.) Specifically, claimants argue that the condition which states that "defendant shall submit to warrantless search and seizures of person and property" does not extend to "warrantless searches of [Perez's] residence, vehicle or tenants in his rental property." (*Id.*) Claimants contend that the condition was limited to searches of Perez's "person and personal effects." (*Id.*) Claimants' argument is unavailing.

The Supreme Court has made clear that warrantless searches are permissible where "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987) (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 351 (1985) (Blackmun, J., concurring in the judgment)). The operation of probation and parole systems is one such "special need," and the Supreme Court "has repeatedly acknowledged that a state's interests in reducing recidivism . . . among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment." *Samson v. California*, 547 U.S. 843, 853 (2006); *see also United States v. Mixell*, 806 F. App'x 180, 185 (4th Cir. 2020) ("Such [warrantless] searches are permitted without probable cause when reasonable in light of the 'special need' to ensure

8

compliance with supervised release conditions designed to rehabilitate the defendant and to protect the community.").

Regarding the locations authorized to be searched under the condition of Perez's supervised release, none of the authorities provided by claimants support their limited definition of "person and property." This Court has not found any case indicating that personal residences or vehicles are not encompassed by the generic term "property." The Fourth Circuit has not addressed the term in the context of a warrantless search permitted by supervised release condition, but in the context of interpreting a bankruptcy statute, the court noted that "[p]roperty is a term of very broad signification, embracing everything that has exchangeable value or goes to make up a man's wealth—every interest or estate which the law regards of sufficient value for judicial recognition." *Samet v. Farmers' & Merchs.' Nat'l Bank of Balt.*, 247 F. 669, 671 (4th Cir. 1917). This broad definition tracks with the Merriam-Webster definition of "property" as "something owned or possessed" and accompanying example of "a piece of real estate." *Property*, Merriam-Webster, https://www.merriam-webster.com/dictionary/property (last visited Sept. 21, 2022). Thus, the Court finds that Perez's vehicle and residences are appropriately considered "property" under the warrantless search condition.

Furthermore, claimants' contention that the warrantless search condition did not extend to Perez's "rental property" at 140 Teal Drive is not persuasive. (ECF No. 11 at 8.) The search executed at 140 Teal Drive occurred because officers had reasonable suspicion that claimant Perez was also using that address as a residence. (ECF No. 1-1 ¶¶ 9–12.) The Supreme Court has made clear that "no more than reasonable suspicion" is required to conduct a search of a probationer's house where a probation term permits warrantless

9

searches.  *United States v. Knights*, 534 U.S. 112, 121 (2001).  Given the evidence suggesting that 140 Teal Drive was indeed the home of Perez, (ECF Nos. 1-1 ¶¶ 7–10; 11-3 at 2), the officers were permitted to initiate a search of that residence under the terms of Perez's supervised release.  It makes no difference that claimant Coleman was also living at 140 Teal Drive at that time.  Per the terms of his supervised release, Perez was required to notify other occupants of his residence that the residence could be subject to warrantless search.  (ECF No. 1-1 ¶ 6.)

Accordingly, the search of 140 Teal Drive did not violate claimants' Fourth Amendment rights.  Officers had reasonable suspicion that Perez resided at 140 Teal Drive, and the terms of his supervised release allowed for U.S. probation officers to search his residence without a warrant.

### C. Search Warrant Issuance and Execution

Claimants next raise a host of issues challenging the validity of the searches at 721 Lawndale Drive and 140 Teal Drive.  (ECF No. 11 at 8–9.)  Claimants argue that there was no reasonable suspicion to justify the searches and that both searches violated the Fourth Amendment.  (*Id.*)  They also contend that the warrant later obtained during the search of 140 Teal Drive was not valid because the warrant application was insufficient.  (*Id.* at 12.)  Last, claimants maintain that "[t]here is compelling evidence of corruption" by the officers who executed the Teal Drive warrant.  (*Id.* at 18.)

As established above, the search of 721 Lawndale Drive (Perez's residence registered with probation) plainly fell within the terms of his supervised release condition permitting warrantless searches.  The information obtained from that search, specifically, pill bottles containing Perez's name and the 140 Teal Drive address (an address which Perez denied any knowledge of), confirmed information that the officers had already received from a

confidential source indicating Perez was in fact living at Teal Drive. (ECF No. 1-1 ¶¶ 7–10.) The initial search of the kitchen at 140 Teal Drive likewise fell within the terms of his supervised release condition.

Claimants next challenge the issuance of the warrant which expanded the breadth of officers' search at 140 Teal Drive. "A warrant is constitutionally sound when issued by a neutral magistrate and supported by probable cause." *United States v. Montieth*, 662 F.3d 660, 664 (4th Cir. 2011) (citing *Illinois v. McArthur*, 531 U.S. 326, 330 (2001)). Whether there exists probable cause is a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [the magistrate] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "Because probable cause is evaluated through a 'totality-of-the-circumstances' analysis rooted in common sense . . . we 'must accord "great deference" to the magistrate's assessment of the facts presented to him.'" *Id.* (quoting *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990)). The Court's only inquiry is whether there was a "substantial basis for determining the existence of probable cause." *Id.* (quoting *Gates*, 462 U.S. at 239).

The Court finds there was a substantial basis for the probable cause determination supporting the warrant for 140 Teal Drive. When officers first initiated the search of Teal Drive based on the supervised release term, they found "a white powder substance located in a false container in a lemonade container," as well as "larger quantities of the white powder substance in a hidden compartment in the kitchen cabinet" which the officers believed to be cocaine. (ECF No. 1-1 ¶ 13.) The warrant to search the remainder of 140 Teal Drive thus was supported by probable cause.

Claimants also contest the warrant application pertaining to the defendant currency itself, claiming that the Government's affidavit "deliberately with reckless disregard of the truth omitted material facts, made false statements and mispresented matters to mislead the court" in violation of *Franks v. Delaware*, 438 U.S. 154 (1978). (ECF No. 11 at 15.)

"To establish a *Franks* violation, a defendant must prove that the affiant either intentionally or recklessly made a materially false statement or that the affiant intentionally or recklessly omitted material information from the affidavit." *United States v. Pulley*, 987 F.3d 370, 376 (4th Cir. 2021) (quoting *United States v. Wharton*, 840 F.3d 163, 168 (4th Cir. 2016)). A defendant's burden "is high," and there is a "presumption of validity with respect to a search-warrant affidavit." *Id.* at 376–77 (citing *Franks*, 438 U.S. at 155–56). "[C]onclusory allegations of a defect are insufficient, and defendants must offer proof by a preponderance of intentional or reckless falsehood to prevail." *Id.* at 377.

Here, claimants have not met their burden for demonstrating a *Franks* violation within Officer Mosqueda's affidavit. Several of claimants' concerns—such as the location of Perez's key to his safe at Teal Drive[4]—appear immaterial to the ultimate probable cause determination. None of the currency subject to forfeiture, the controlled substances, the drug paraphernalia, or written ledger were contained in the safe referenced by claimants. (ECF No. 1-1 ¶¶ 18–21.)

Claimants also dispute the officers' preliminary identification of the white-powder substances found during the initial search of 140 Teal Drive and contend that what was found

---

[4] Claimants argue that Officer Mosqueda's affidavit misrepresents where the key to Perez's safe at 140 Teal Drive was initially found. (ECF No. 11 at 15–16.) Claimants contend that the affidavit erroneously suggests that the key was found at 140 Teal Drive when it was actually found at 721 Lawndale Drive. (*Id.*)

12

are "not controlled substances," but "likely rat poison." (ECF No. 11 at 15.) Such a conclusory allegation is insufficient to establish a *Franks* violation.

Claimants also challenge Officer Mosqueda's declaration that "banded" currency is "a common practice for drug traffickers" and argue that this assertion is "utterly ridiculous" as a basis for connection between the defendant currency and controlled substances found. (*Id.* at 16.) Officer Mosqueda's declaration was made "based on [his] training and experience," which claimants do not contest. Rather, claimants bring up that Perez operated "a 10,000 sq. ft. venue in Charlotte" which explains the banded currency. (*Id.*) That contention alone does not support any finding that Officer Mosqueda intentionally or recklessly made a materially false statement or omitted material information from the affidavit.

Accordingly, the Court finds no deficiencies in either the 140 Teal Drive warrant or the warrant for the arrest of the defendant currency.[5]

### D. Release of Defendant Currency to Pay for Counsel

Claimants also argue that Perez's Sixth Amendment right to counsel in the ongoing state prosecution against him requires that the defendant currency be returned so that he can retain defense counsel in that proceeding. (ECF No. 11 at 17.) Claimants' argument has been squarely rejected by the Supreme Court and Fourth Circuit. "[A] criminal defendant has no constitutional right to use forfeitable property to pay counsel." *United States v. Undetermined Amount of U.S. Currency*, 376 F.3d 260, 269 (4th Cir. 2004) (citing *Caplin & Drysdale v. United States*, 491 U.S. 617, 624–33 (1989)). "[A]ny Sixth Amendment right to obtain counsel of choice does not extend beyond the individual's right to spend his own legitimate,

---

[5] Claimants also argue that the magistrate who issued the warrant was not neutral or detached. (ECF No. 11 at 16–17.) However, claimants provide no evidence in support of this serious allegation, and the Court finds the argument wholly without merit.

13

nonforfeitable assets." *United States v. Farmer*, 274 F.3d 800, 802 (4th Cir. 2001) (citing *Caplin*, 491 U.S. at 624–33). Accordingly, claimants are not entitled to the release of the defendant currency for the purposes of retaining counsel in this matter and any related criminal proceeding.

For the reasons stated herein, the Court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that Claimants' Motion to Dismiss Complaint, Quash Warrant of Arrest, Suppress Evidence, and Return Property, (ECF No. 10), is **DENIED**.

This, the 21st day of September 2022.

/s/ Loretta C. Biggs
United States District Judge