# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:21CV584 |
| | ) | |
| $25,325.00 IN U.S. CURRENCY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

The United States of America (the "Government") initiated this *in rem* civil forfeiture proceeding on July 16, 2021, pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C) for the forfeiture of $25,325.00 in U.S. Currency ("defendant currency"). (ECF No. 1.) On August 19, 2021, Augustine Perez and DeAnna Coleman ("claimants") filed verified claims as to the defendant currency. (ECF Nos. 6; 7.) Before the Court is claimants' *pro se* Motion for Relief from Order & Judgment,[1] (ECF No. 58), filed on July 19, 2023. Also before the Court is the Government's Motion for Summary Judgment, (ECF No. 59), filed on August 1, 2023.[2]

---

[1] Claimants appear *pro se* so their motion "is to be liberally construed" and "must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)).

[2] In their Response brief, claimants appear to move for summary judgment pursuant to Rule 56(f)(1) and request that the Court provide the required notice to grant summary judgment for a non-moving party. (ECF No. 65 at 10.) After liberally construing and considering claimants' request, the Court does not find any basis to grant summary judgment in claimants' favor. Therefore, the Court declines to exercise its discretion to initiate notice in order to grant summary judgment for claimants. Accordingly, the Court denies claimants' request.

On September 7, 2021, claimants filed a "Joint Motion to Dismiss Complaint, Quash the Warrant of Arrest in Rem, Suppress Evidence, and Return the Property." (ECF No. 10.) Upon a motion by the Government, the Court stayed the case pending the resolution of the related state criminal investigation and prosecution. (ECF No. 19.) After the state court matters were resolved and upon a motion by the Government, the Court lifted the stay, (ECF No. 29), and briefing on claimants' motion continued. Ultimately, the Court denied claimants' motion to dismiss on September 21, 2022. (ECF No. 34 at 14.) The case proceeded to discovery, which closed on February 10, 2023.[3] (ECF No. 31; Text Order dated January 4, 2023.) Claimants now seek relief from the Court's September 21 Order under Rule 60 of the Federal Rules of Civil Procedure and request *de novo* review of the matters raised in their September 7, 2021, motion. On September 22, 2023, claimants filed a letter to "Amend/Supplement" their Rule 60 motion. (ECF No. 67.) The Government moves for summary judgment under Rule 56 asserting that there is no genuine issue of material fact that the defendant currency is subject to forfeiture. For the reasons stated herein, claimants'

---

[3] Claimants contend that they have not received all of the discovery in this case and therefore the Government's summary judgment motion is not proper. (ECF No. 65 at 2–3.) Specifically, claimants assert that the Government has not produced the lab reports of the controlled substances seized, written reports, and body-cam videos and photographs, (ECF No. 65 at 2), and allegedly seized paystubs of claimant Perez, (ECF No. 65-1 at 2 ¶ 10). The Magistrate Judge in this case has addressed claimants' discovery related motions and requests. (*See* Text Order dated October 11, 2022; Text Orders dated January 4, 2023; Text Order dated July 19, 2023). Discovery in this case closed on February 10, 2023, therefore, the Government's summary judgment motion is properly before the Court. Even if the information that claimants assert has not been produced was in the record and construed in the light most favorable to claimants, it would not create a genuine issue of material fact sufficient to defeat summary judgment. *See Ingle ex rel. Est. of Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006) ("Rule 56(f) requires that summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition . . . . Rule 56(f) motions may be denied, however, if the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment.") (internal quotation marks and citations omitted).

2

motion for relief pursuant to Rule 60 will be denied, and the Government's motion for summary judgment will be granted.

## I.  MOTION FOR RELIEF FROM ORDER

Claimants move for relief from this Court's September 21, 2022, Memorandum Opinion and Order, (ECF No. 34), which denied claimants' Joint Motion to Dismiss Complaint, Quash Warrant of Arrest, Suppress Evidence, and Return Property.  Claimants bring the motion pursuant to Rules 60(a), (b)(3), (b)(4), and (b)(6) of the Federal Rules of Civil Procedure.  (ECF No. 58 at 1.)

### 1.  Rule 60(a) is Not Applicable

Rule 60(a) permits the court to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record."  Fed. R. Civ. P. 60(a).  Claimants do not argue nor provide evidence of any clerical mistake or a mistake arising from oversight or omission.  (*See generally* ECF No. 58.)  Instead, they take issue with the Court's decision set forth in the order, therefore Rule 60(a) is inapplicable.  (*Id.*); *see Rhodes v. Hartford Fire Ins. Co.,* 548 F. App'x 857, 859–60 (4th Cir. 2013) (unpublished) (quoting *In re Walter*, 282 F.3d 434, 440 (6th Cir. 2002) ("The basic distinction between clerical mistakes and mistakes that cannot be corrected pursuant to Rule 60(a) is that the former consist of blunders in execution whereas the latter consists of instances where the court *changes its mind,* either because it made a legal or factual mistake . . . or because on second thought it has decided to exercise its discretion in a [different] manner. . ."").  Rule 60(a) "deals solely with the correction of errors that properly may be described as clerical or as arising from oversight or omission.  Errors of a more substantial nature are to be corrected by a motion under Rules 59(e) or 60(b)."  11 Mary Kay Kane, *Federal Practice & Procedure* § 2854, (3d ed. Apr. 2023 update).

3

## 2. Claimants Have Not Met the Threshold for Rule 60(b) Relief

Under Rule 60(b), the court may relieve a party from a final judgment, order, or proceeding for certain enumerated reasons. Fed. R. Civ. P. 60(b). "A motion under Rule 60(b) is addressed to the sound discretion of the district court and will not be disturbed on appeal save for a showing of abuse." *Square Const. Co. v. Washington Metro. Area Transit Auth.*, 657 F.2d 68, 71 (4th Cir. 1981). As a threshold matter, a movant must first demonstrate the threshold conditions of timeliness, a meritorious claim or defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances. *United States v. 4960 Cecil Norman Rd.*, No. 1:05CV00625, 2009 WL 249393, at *3 (M.D.N.C. Feb. 2, 2009) (quoting *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993)), *aff'd sub nom. United States v. Newbold*, 372 F. App'x 438 (4th Cir. 2010). A claim or defense is meritorious if granting the "relief will not in the end have been a futile gesture." *Boyd v. Bulala*, 905 F.2d 764, 769 (4th Cir. 1990). "If these conditions are satisfied, one or more of the six enumerated grounds for relief in Rule 60(b)(1)[–](6) must then be demonstrated." *4960 Cecil Norman Rd.*, 2009 WL 249393, at *3.

Claimants assert that they are entitled to relief for three reasons under Rule 60(b). (ECF No. 58 at 1.) First, under subsection (b)(3), claimants argue that there was fraud, misrepresentation, and misconduct by the Government. (*See id.* at 1, 7.) Specifically, claimants argue that the Government "deliberately misrepresented the white powder as Fentanyl knowing it was not a control substance [sic], because [Assistant U.S. Attorney Zeller] too possess[es] these lab results." (*Id.* at 7.) Second, under subsection (b)(4), claimants argue that the Court's order is void because according to claimants, they were not afforded due process because the Court's review of their motion was "truncated" and "far from timely, meaningful,

full or fair," (*id.* at 1), and claimants also argue that the stay in this case caused them irreparable harm, (*id.* at 15). Third, claimants argue that the catchall provision under subsection (b)(6), which allows the court to consider "any other reason that justifies relief," Fed. R. Civ. P. 60(b)(6), provides another basis for their request, (*id.* at 1).

As a threshold matter, the Court must determine whether claimants have established that their motion is timely, and presents a meritorious claim or defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances.

"A motion under Rule 60(b) must be made within a reasonable time." Fed. R. Civ. P. 60(c). Although, claimants move for relief nearly nine months after the Court's order was entered, claimants provide a sufficient reason for the delay in their Reply—the time required to obtain the lab report, which claimants assert was not included in discovery. (ECF No. 64 at 1–2.) In light of claimants' explanation for the delay, claimants proceeding *pro se*, and claimant Perez being incarcerated, the Court finds that claimants' motion is timely.

In the motion, however, claimants seek to relitigate issues that this Court has already settled, without providing any evidence of a meritorious claim or defense. *See CNF Constructors, Inc. v. Donohoe Const. Co.*, 57 F.3d 395, 401 (4th Cir. 1995) ("[W]here a motion is for reconsideration of legal issues already addressed in an earlier ruling, the motion 'is not authorized by Rule 60(b).'" (quoting *United States v. Williams*, 674 F.2d 310, 313 (4th Cir. 1982)). Claimants attached to their motion a lab report, (ECF No. 58 at 19–26), which they argue shows that some of the white powders found in their residence were not controlled substances as the officers initially reported in order to obtain the search warrant, which led to the discovery and seizure of the defendant currency, (*id.* at 7). Even if the Court were to consider the lab report as authenticated, the report reflects that three items found at claimants' residence

5

did not test positive for controlled substances, but two items tested positive for fentanyl. (*Id.* at 21.) Moreover, claimants provide no evidence to prove that the officer who was the affiant for the search warrant "either intentionally or recklessly made a materially false statement or that the affiant intentionally or recklessly omitted material information from the affidavit." *United States v. Pulley*, 987 F.3d 370, 376 (4th Cir. 2021) (explaining the standard for establishing a *Franks* violation). Therefore, the lab report, even if properly before the Court, would not establish a *Franks* violation or undermine the probable cause determination that permitted the search that resulted in seizing the defendant currency.

In addition, claimants' contentions concerning due process violations are without merit. *See United States v. $41,320 U.S. Currency*, 9 F. Supp. 3d 582, 586 (D. Md. 2014) (quoting *United States v. Munson*, 477 Fed. Appx. 57, 63 (4th Cir. 2012) (unpublished) ("In civil forfeiture actions, to comply with due process, notice of the forfeiture proceedings 'must be reasonably calculated, under all the circumstances, to apprise the petitioner of the action.'") Claimants were afforded adequate notice of these proceedings and an opportunity to be heard, which they exercised in filing the September 7, 2021, motion to dismiss and corresponding exhibits, all of which the Court considered. Furthermore, claimants were also heard with respect to the Government's motion to stay and claimants' objection.

The Government does not argue that there is unfair prejudice, and the Court does not find any. *See Hummel v. Hall*, 868 F. Supp. 2d 543, 561 (W.D. Va. 2012) ("[E]very time a court vacates a judgment, an invariable consequence is that a party is prejudiced, but that is 'not [. . .] the type of prejudice contemplated by the rule.'" (quoting *Werner v. Carbo*, 731 F.2d 204, 207 (4th Cir. 1984)). However, claimants have not presented any facts to show that there are

exceptional circumstances that warrant relief from this Court's order, and the Court similarly does not find any.

Given the lack of a meritorious claim or defense and exceptional circumstances, the Court finds that claimants have not satisfied the threshold conditions for the Court to consider their request for relief pursuant to Rule 60(b). Even if claimants had met the threshold conditions, they have not demonstrated any basis for relief under Rule 60(b) subsection (3), (4), or (6).

A court may grant relief under Rule 60(b)(3) if the movant establishes "fraud . . . misrepresentation, or misconduct by an opposing party," under Rule 60(b)(4) if "the judgment is void," and under Rule 60(b)(6) for "any other reason that justifies relief." Fed. R. Civ. P. 60(b). Claimants have not provided sufficient evidence to support their motion under Rule 60(b)(3) or (b)(4). To succeed on a motion under Rule 60(b)(3), claimants must prove "the misconduct complained of by clear and convincing evidence and demonstrate that such misconduct prevented him from fully and fairly presenting his claim or defense." *Square Const. Co.*, 657 F.2d at 71. The movant must also prove that the misconduct complained of is traceable to an adverse party. *Harris v. Mapp*, 719 F. Supp. 1317, 1324 (E.D. Va. 1989), *aff'd*, 907 F.2d 1138 (4th Cir. 1990). Here, claimants have merely argued that there was fraud, misrepresentation, and misconduct by the Government, claiming that the Government knew that its statements in these proceedings about the controlled substances being fentanyl were false. Claimants have not established that these were misrepresentations, as the Court addressed when discussing the lab report, or established any other fraud, misrepresentation, or misconduct by the Government with clear and convincing evidence in order to meet their burden to demonstrate a basis for relief under Rule 60(b)(3).

7

A court must grant relief under Rule 60(b)(4) if an order is void.[4] Claimants argue that the order in this case is void because the Court acted in a manner inconsistent with due process of law. Claimants have made this argument at nearly every stage of case, and each time, without sufficient support. (*See* ECF Nos. 11 at 17–18; 22 at 5–6; 50 at 3–4.) "An order is 'void' for purposes of Rule 60(b)(4) only if the court rendering the decision lacked personal or subject matter jurisdiction or acted in a manner inconsistent with due process of law." *Wendt v. Leonard*, 431 F.3d 410, 412 (4th Cir. 2005). The Fourth Circuit "narrowly construe[s] the concept of a 'void' order under Rule 60(b)(4) precisely because of the threat to finality of judgments and the risk that litigants . . . will use Rule 60(b)(4) to circumvent an appeal process they elected not to follow." *Id.* In the instant motion, claimants' due process contentions depend on their unsupported claim that the Court ignored their arguments and evidence and showed favoritism to the Government. (ECF No. 58 at 16–17.) However, the Court's order demonstrates the opposite. (*See generally* ECF No. 34). As discussed, claimants were provided all the process that was due. Claimants' disagreement with the Court's decision does not equate to a violation of due process of law. *See Campbell v. Beane*, Civil Action No. 2:08-1102, 2012 WL 2998576, at *2–3 (S.D.W. Va. July 23, 2012) (finding that *pro se* plaintiff's motion

---

[4] The Court assesses claimants' motion under Rule 60(b)(4) on the merits despite the threshold determination. Although the Fourth Circuit has not directly addressed the issue, in its review of Rule 60(b)(4) motions, the Fourth Circuit has not required satisfaction of the timeliness threshold requirement. *See, e.g., Foster v. Arletty 3 Sarl*, 278 F.3d 409, 414 (4th Cir. 2002) ("Other circuit courts addressing the issue have concluded that a motion to vacate a void judgment pursuant to Rule 60(b)(4) contains little, if any, time limit."). Furthermore, unlike other Rule 60(b) motions, the Fourth Circuit reviews Rule 60(b)(4) motions *de novo, see Wendt v. Leonard*, 431 F.3d 410, 412 (4th Cir. 2005) (citing *Compton v. Alton S.S. Co.*, 608 F.2d 96, 107 n. 21 (4th Cir.1979). Other courts have held that this *de novo* review is proper because "if the judgment is void, relief is mandatory" therefore, the decision is not within the district court's discretion. *Combs v. Nick Garin Trucking*, 825 F.2d 437, 441 (D.C. Cir. 1987). Some courts within this circuit interpret the Fourth Circuit case law as exempting Rule 60(b)(4) motions from the general Rule 60(b) threshold requirements. *See Vinten v. Jeantot Marine Alls., S.A.*, 191 F. Supp. 2d 642, 649–50 (D.S.C. 2002). Even considering the merits of claimants' Rule 60(b)(4) motion, it cannot succeed.

under Rule 60(b)(4) lacked merit where plaintiff claimed the court failed to address the alleged Fourth Amendment and due process violations, when in fact, plaintiff raised identical arguments in an earlier pleading, which the court addressed.)

A court may grant relief under Rule 60(b)(6) for "any other reason that justifies relief," Fed. R. Civ. P. 60(b)(6), commonly referred to as the catchall reason. "Although Rule 60(b)(6) is a catchall provision which allows a court to grant relief for any reason, case law limits the reasons for which a court may grant relief under Rule 60(b)(6)." *Dowell,* 993 F.2d at 48. The "catchall reason . . . may be invoked in only 'extraordinary circumstances' when the reason for relief from judgment does not fall within the list of enumerated reasons given in Rule 60(b)(1)[–](5)." *Aikens v. Ingram*, 652 F.3d 496, 500 (4th Cir. 2011) (citing *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 n.11, 864 (1988)). The Fourth Circuit has held that a court may grant relief under Rule 60(b)(6) if "such action is appropriate to accomplish justice." *Id.* (quoting *Klapprott v. United States*, 335 U.S. 601, 614–15 (1949). Claimants largely raise these same arguments in the instant motion that they raised in the original motion. The Court addressed these arguments in its September 21, 2022, Order. Claimants' disagreement with the Court's decision does not equate to extraordinary circumstances. As discussed above, the lab report that claimants submit with the instant motion would not establish a defense based on a *Franks* violation. Therefore, the Court finds that there are no extraordinary circumstances and that relief under 60(b)(6) is not appropriate to accomplish justice.

On September 22, 2023, claimants filed a letter seeking to amend or supplement the motion for relief under Rule 60. (ECF No. 67.) In the letter, claimants set forth additional arguments, including that the Government "for the first time, addressed and admitted that the officers decided to search both residences and the van long before seeing the pill bottles and

9

the arrival of the K-9." (*Id.*) Claimants continue that "[t]his admission/acknowledgment comes after the Court relied on the pill bottles to justify invading the Teal Drive residence without a warrant." (*Id.*) Claimants are mistaken.

The search warrant application states that "[t]he plan of the [January 4, 2021] operation was for US Federal Probation to conduct searches of two locations in Rockingham County that belonged to Augustine Perez." (ECF No. 11-1 at 2.) This same information is recounted in United States Drug Enforcement Administration ("DEA") Task Force Officer Adam D. Mosqueda's declaration, which was attached to the Government's complaint for forfeiture in this case. (*See* ECF No. 1-1 ¶ 7.) Both the state officers and officials who originally sought the warrant and the Government in these proceedings have been transparent and consistent concerning the plan to search both of claimant Perez's residences.

Furthermore, while this Court stated that "[t]he information obtained from [the search of 721 Lawndale Drive], specifically, pill bottles containing Perez's name and the 140 Teal Drive address . . . confirmed information that the officers had already received from a confidential source indicating Perez was in fact living at Teal Drive," (ECF No. 34 at 10–11), this Court did not exclusively rely on the pill bottles to "justify" the initial warrantless search of the Teal Drive residence. (*See id.* at 2 ("Probation officers had received information from a confidential reliable source *and conducted follow-up investigative efforts, leading them to reasonably believe Perez was living at 140 Teal Drive* . . . even though his address was listed as 721 Lawndale Drive . . . ." (emphasis added)).) As this Court held in its September 21, 2022, Order, "[o]fficers had reasonable suspicion that Perez resided at 140 Teal Drive, and the terms of his supervised release allowed for U.S. probation officers to search his residence without a warrant." (*Id.* at 10.) The Court has considered claimants' amendments and supplements as

10

outlined in claimants' September 22, 2023, letter. Claimants' additions do not provide information or evidence that cure the defects discussed above.

Therefore, the Court finds that Rule 60(a) is not applicable to the relief sought and that claimants have not satisfied the threshold conditions for consideration of their Rule 60(b) motion. Furthermore, even if these conditions were satisfied, claimants have not provided sufficient evidence to demonstrate grounds for relief under Rule 60(b)(3), (b)(4), or (b)(6). Having found no basis, the Court declines to grant relief under Rule 60(b) as such relief would be futile and contrary to the interests of justice. Claimants' motion is denied.

## II.    MOTION FOR SUMMARY JUDGMENT

### A.    STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568 (4th Cir. 2015) (citations and internal quotation marks omitted). "[I]n deciding a motion for summary judgment, a district court is required to view the evidence in the light most favorable to the nonmovant" and to "draw all reasonable inferences in his favor." *Harris v. Pittman*, 927 F.3d 266, 272 (4th Cir. 2019) (citing *Jacobs*, 780 F.3d at 568). A court "cannot weigh the evidence or make credibility determinations," *Jacobs*, 780 F.3d at 569 (citations omitted), and thus must "usually" adopt "the [nonmovant's] version of the facts," even if it seems unlikely that the moving party would prevail at trial, *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

Where the nonmovant will bear the burden of proof at trial, the party seeking summary judgment bears the initial burden of "pointing out to the district court . . . that there is an

11

absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, then the burden shifts to the nonmoving party to point out "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In so doing, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). Instead, the nonmoving party must support its assertions by "citing to particular parts of . . . the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1); *see also Celotex*, 477 U.S. at 324.

## B. FACTS

Claimant Perez was on supervised release after having been convicted of conspiracy to possess with intent to distribute and distribution of cocaine, continuing criminal enterprise, distribution of cocaine, possession with intent to distribute cocaine, possession with intent to distribute cocaine on public school property, distribution of crack cocaine, and carrying firearms during a drug transaction in the Western District of Virginia on March 15, 1991. (ECF No. 60-1 ¶ 3.) As a condition of his supervised release, claimant Perez was required to submit his person and property to warrantless searches upon reasonable suspicion of possession of controlled substances or related paraphernalia. (*Id.*) Additionally, the conditions of claimant Perez's supervised release required him to notify other occupants of his residence that the residence could be subject to warrantless search. (*Id.*) Claimant Perez's term of supervised release commenced on August 29, 2014, in the Middle District of North Carolina. (*Id.* ¶ 2.) On May 7, 2015, claimant Perez was transferred to the low intensity supervision

caseload, however, on November 5, 2019, claimant Perez tested positive for marijuana and was transferred back to active supervision at which point United States Probation Officer Chase Mauney of the Middle District of North Carolina began supervising him. (*Id.* at ¶¶ 1–2.)

In December 2019, Officer Mauney began receiving credible information that claimant Perez was not living at his reported address, was involved in the trafficking of drugs, and was traveling outside of the state of North Carolina without permission. (*Id.* ¶ 2.) After receiving this information, Officer Mauney began conducting surveillance on claimant Perez. (*Id.*) In January 2021, information received from a confidential reliable source and follow-up investigative efforts by probation officers, including surveillance, indicated that claimant Perez had 721 Lawndale Drive, Reidsville, North Carolina, listed as his address but was actually living at 140 Teal Drive, Reidsville, North Carolina, and that claimant Perez was involved in drug trafficking. (*Id.* ¶¶ 3–4.)

U.S. probation officers therefore planned to conduct probationary searches of both 721 Lawndale Drive and 140 Teal Drive. (*Id.* ¶ 5.) Following standard practice, U.S. probation officers contacted the Reidsville Police Department ("RPD") and the Rockingham County Sheriff's Office ("RCSO") to assist with the searches. (*Id.*) On January 4, 2021, U.S. probation officers began carrying out a probationary search of 721 Lawndale Drive. (*Id.* ¶ 6.) RPD officers were present and assisted with the search. (*Id.*) During the search, claimant Perez arrived at the residence in a van, and he denied any knowledge of the 140 Teal Drive address. (*Id.* ¶ 7.) Sergeant Jeremy Revis of the RPD was present during the search at 721 Lawndale Drive and affirms that a K-9 unit alerted on the van that claimant Perez arrived in and that officers located a trap compartment in the van, which is typically used to store and transport

13

narcotics. (ECF No. 53-3 ¶¶ 1, 2–5.) During the search at 721 Lawndale Drive, U.S. probation officers located prescription bottles with Perez's name on them and the address of 140 Teal Drive, Reidsville, North Carolina. (ECF No. 60-1 ¶ 6.)

Around the same time, U.S. probation officers initiated a probationary search at 140 Teal Drive. (*Id.* ¶ 8.) RCSO personnel were present and assisted with the search. (*Id.*) Claimant Coleman also resided at 140 Teal Drive and was present during the search of the residence. (*Id.* ¶ 9.) Upon arrival, U.S. probation officers advised claimant Coleman that they were going to conduct a probationary search of the residence. (*Id.*) Claimant Coleman represented that she was claimant Perez's girlfriend. (*Id.*) While searching the kitchen, U.S. probation officers discovered a white powdery substance located in a false container designed to look like a lemonade container. (*Id.* ¶ 10.) Nearby, they also located larger quantities of a white powdery substance in a hidden compartment in the kitchen cabinet. (*Id.*) Based on their training and experience, the officers believed the white powdery substance was likely a controlled substance. (*Id.*) Based on the results of the probationary search, RCSO detectives requested that the U.S. Probation Office suspend its search while RCSO submitted a search warrant request. (*Id.* ¶ 11.) U.S. Probation Office then ceased its search. (*Id.*)

Once a search warrant was issued, the RCSO performed a search of 140 Teal Drive. (ECF No. 60-2 ¶ 4.) Sheriff's Deputy Terry Gautier of the RCSO supported the U.S. Probation Office search of 140 Teal Drive and the RCSO's subsequent search. (*Id.* ¶¶ 2–3.) Sheriff's Deputy Gautier used K-9 "Bronco" to assist with the search of the residence. (*Id.* ¶ 4.) K-9 Bronco indicated a positive alert on approximately one gram of cocaine and two grams of heroin, which were in claimant Perez's bedroom at 140 Teal Drive. (*Id.* ¶ 5.) United States currency was located hidden behind a vanity mirror and behind a bathroom door in claimant

Perez's bedroom at 140 Teal Drive. (*Id.* ¶ 6.) The currency was packaged in rubber bands, and the portion found behind the vanity mirror was "banded" in $1,000 increments. (*Id.*) According to the detectives conducting the search, based on their training and experience, "banding" currency is a common practice for drug traffickers. (*Id.*) K-9 Bronco was not used to test the currency. (*Id.*)

Detective Cicerio "Tommy" Underwood of the RCSO stated that the following items were found and seized during the search of 140 Teal Drive: a Sig 2340 handgun; six rounds of .357 ammunition loaded into the handgun and one box of 22 rounds of .357 ammunition; one .380 magazine containing eight .380 rounds with a holster; one sentry safe, a key to the safe was found on claimant Perez's key ring (ECF No. 1-1 ¶ 21), and the safe contained crown royal bags and gloves along with a Taurus .380 handgun and a box of fifty rounds for the Taurus handgun; four rounds of .380 ammunition; four plastic baggies containing white powder; 195 thirty milligram oxycodone hydrochloride pills; an unidentified white powdery substance in a false container in the kitchen; two other false containers; eight bars of unidentified white powdery substance found in a false compartment in the kitchen cabinets; digital scales; a paper ledger recording names and large amounts of currency, in a manner similar to drug ledgers that Detective Underwood had encountered in the past; one blue and black bag containing a white money bag; two bills addressed to claimant Perez at 140 Teal Drive; twenty-one Jardiance pills (a non-controlled pharmaceutical used to control type-2 diabetes); one bottle containing seventy five Aspirin pills; one damaged black cell phone; one black Samsung Galaxy S8 tablet device; two other black tablet devices; one Acer computer; one digital recorder; one HP laptop; three keys; one money counter; computer cables; and the defendant currency. (ECF No. 53-2 at 1, ¶¶ 1, 5.)

### C.    THE GOVERNMENT IS ENTITLED TO FORFEITURE

To prevail on its motion for summary judgment, the Government must show "an entitlement to a forfeiture judgment as a matter of law." *United States v. 998 Cotton St., Forsyth Cty., N.C.*, No. 1:11-CV-356, 2013 WL 1192821, at *9 (M.D.N.C. Mar. 22, 2013).  The Civil Asset Forfeiture Reform Act of 2000 places the burden on the government to establish that the currency is subject to forfeiture.  18 U.S.C. § 983(c)(1); *see, e.g.*, *United States v. Mondragon*, 313 F.3d 862, 865 (4th Cir. 2002).  The Government must show, by a preponderance of the evidence, that it was entitled to seize defendant currency based on "the totality of the circumstances." *United States v. $864,400.00 in U.S. Currency*, 1:05CV919, 2009 WL 2171249, at *2 (M.D.N.C. July 20, 2009), *aff'd*, 405 F. App'x 717 (4th Cir. 2010).

The Government contends that it is entitled to civil forfeiture on two grounds.  (ECF No. 59 at 1–2).  The first is pursuant to 21 U.S.C. § 881(a)(6), which permits forfeiture of "[a]ll moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys . . . used or intended to be used to facilitate any violation of this subchapter."  The second is pursuant to 18 U.S.C. § 981(a)(1)(C), which provides for forfeiture of any property that "constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such an offense."  "Specified unlawful activity" includes "dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year[.]"  18 U.S.C. §§ 1956(c)(7)(A), 1961(1)(A).

To show that property is subject to forfeiture, the Government must allege that sufficient facts "are more likely true than not." *$864,400 in U.S. Currency*, 2009 WL 2171249, at *2 (citing *United States v. Kiulin*, 360 F.3d 456, 461 (4th Cir. 2004)). Circumstantial evidence is sufficient to establish that defendant currency is either proceeds of, or traceable to, criminal activity. *See United States v. $433,908 in U.S. Currency*, 473 F. Supp. 2d 685, 690 (E.D.N.C. 2007) (citing *United States v. Thomas*, 913 F.2d 1111, 1115–17 (4th Cir. 1990) *superseded by statute*, Civil Asset Forfeiture Reform Act of 2000, Pub. L. No. 106-185, 114 Stat. 202. Proceeds need not be tied to any particular drug transaction. *998 Cotton St., Forsyth Cty., N.C.*, 2013 WL 1192821, at *13 (citing *United States v. 1982 Yukon Delta Houseboat*, 774 F.2d 1432, 1435 n.4 (9th Cir. 1985)).

Here, the Government contends that the totality of the evidence demonstrates by a preponderance that the defendant currency constitutes proceeds of illegal activity and that the record demonstrates that Claimants do not have sufficient legitimate, verifiable income to explain how they accumulated the defendant currency. (ECF No. 60 at 14–16.) The record shows that the defendant currency was in claimants' residence hidden behind a vanity mirror and behind a bathroom door and the portion found behind the vanity mirror was "banded" in $1,000 increments. In the same residence, officers located one gram of cocaine, two grams of heroin and a safe; the key for this safe was found on Perez's key ring. The safe was securing a handgun, ammunition for that handgun, four plastic baggies containing white powder, and 195 thirty milligram oxycodone hydrochloride pills and other items. Officers also located in the residence, among other things, white powdery substances found in a false compartment in the kitchen cabinets, false containers, which are storage containers designed to look like common household products used to hide objects, as well as digital scales, a paper ledger

17

recording names and large amounts of currency, in a manner consistent with a drug ledger, and a money counter. Also, a trained K-9 alerted to claimant Perez's van, and even though no controlled substances were found in the van, a trap compartment was found in the van, which an officer indicated is typically used to store and transport narcotics.

Courts have held that possession of "large sums of cash" can be "strong evidence" that the cash is related to drug activity. *United States v. Currency, U.S., $147,900.00*, 450 F. App'x 261, 264 (4th Cir. 2011) (quoting *United States v. $84,615 in U.S. Currency*, 379 F.3d 496, 501–02 (8th Cir. 2004)); *see also United States v. $252,300.00 in U.S. Currency*, 484 F.3d 1271, 1275 (10th Cir. 2007) ("A large amount of currency, while not alone sufficient to establish a connection to a drug transaction, is strong evidence of such a connection." (citation and internal quotation marks omitted)).

Further, courts have held that large sums of cash in close proximity to drugs is strong circumstantial evidence of drug trafficking. *United States v. $149,442.43 in U.S. Currency*, 965 F.2d 868, 877 (10th Cir. 1992) ("[t]he unusually large amount of hidden currency, the presence of drug paraphernalia, including packaging supplies and drug notations reflecting large drug transactions, establishes a sufficient nexus between the defendant property and claimant['s] . . . involvement in drug trafficking."); *United States v. $80,760.00 in U.S. Currency*, 781 F. Supp. 462, 473 (N.D. Tex. 1991) ("a large amount of money, found in combination with other persuasive circumstantial evidence, particularly the presence of drug paraphernalia" can be evidence of a connection between the money seized and a drug transaction), *aff'd*, 978 F.2d 709 (5th Cir. 1992); *United States v. $24,000.00 in U.S. Currency*, 722 F. Supp. 1386, 1390 (N.D. Miss. 1989) ("[t]he storage of the unexplained $24,000.00 in close proximity to a suitcase of eighteen pounds of marijuana in the cinder block foundation of the claimant's house indicates

that the money seized is drug-related."), *aff'd*, 902 F.2d 956 (5th Cir. 1990), *cert. denied*, 498 U.S. 1024, (1991).

In addition, the Supreme Court has held that "evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert." *Florida v. Harris*, 568 U.S. 237, 246 (2013). As such, an alert from a properly trained canine is entitled to a presumption of reliability. *Id.* Courts in this district have independently found the same. *See, e.g.*, *$864,400 in U.S. Currency*, 2009 WL 2171249, at *3. In this case, the record indicates that K-9 Bronco is trained to detect and alert to the odors of marijuana, cocaine, heroin, methamphetamine, and ecstasy. (ECF No. 60-2 at ¶ 4.) K-9 Bronco indicated a positive alert on the cocaine and heroin that were located in claimant Perez's bedroom at 140 Teal Drive. Additionally, a K-9 with the RPD alerted to claimant Perez's van found to have a trap compartment.

In the totality of the circumstances, the Court finds by a preponderance of the evidence that the defendant currency is either proceeds of, or traceable to, criminal activity involving controlled substances, and therefore it was lawfully seized.

Claimants appear to argue in their Response that they are innocent owners of the defendant currency by describing it as their "untainted assets," (ECF No. 65 at 8–9), but they must prove this defense by a preponderance of the evidence, *see* 18 U.S.C. § 983(d)(1) ("An innocent owner's interest in property shall not be forfeited under any civil forfeiture statute. The claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the evidence."). The Government argues that the evidence in this case demonstrates that claimants do not have sufficient legitimate, verifiable income to explain how

they accumulated the defendant currency. (ECF No. 60 at 14–16.) After reviewing the record, the Court agrees.

Claimant Perez asserts that he has a $10,445.00 interest in the defendant currency. (ECF No. 6 ¶ 1.) In support of claimants' motion to dismiss, claimant Perez asserted that his portion of the defendant currency was acquired from business transactions from his 10,000 square foot venue in Charlotte, North Carolina, and attached his bank records. (ECF Nos. 11 at 16; *see* 11-3 at 12.) However, claimant Perez's bank records, (ECF No. 11-3 at 12), and reported monthly expenses, (ECF No. 46 at 12), do not account for the portion of the defendant currency that he claims.

Claimant Perez also asserts that he was a free-lance paralegal, owned a used car dealership, and claimant Coleman would loan him money for the used car dealership. (ECF Nos. 46 at 9; 65-1 at 2 ¶ 9, 5–10). Claimant Perez contends that, even after this business closed, he continued to buy, repair, and sell used cars and claimant Coleman was an investor. (ECF No. 65-1 at 2 ¶ 9.) Claimant Perez, however, has not provided documentation or evidence of his free-lance paralegal work, salary or wages at the business, business investments, or car sales. Claimant Perez claims that his paystubs showing weekly wages of $1,300.00 from his business were in a bag that was seized and were not produced during discovery. (ECF No. 65-1 at 2 ¶ 10.) Other courts have not found similar unsupported, self-serving arguments persuasive, and neither does this Court. *See United States v. $28,720.00 in U.S. Currency*, Civil No. 1:13-CV-00106-MR-DLH, 2014 WL 5336518, at *2, *6 (W.D.N.C. Oct. 20, 2014) (ordering a judgment of forfeiture where claimant was found with a portion of the defendant currency wrapped in rubber bands in stacks of $1,000 and claimant stated that he obtained the money from selling cars, however, could not produce a bill of sale for any such transactions);

*United States v. $94,200.00 in U.S. Currency*, Civil No. 1:11CV00609, 2012 WL 2885129, at *6 (M.D.N.C. July 13, 2012) ("[Claimant's] statement that she received the money from selling her restaurant, without supporting evidence, does not create a genuine issue of material fact. She has provided no documentation of such a sale, nor has she provided any specific details of the sale, such as the amount or date of the sale or the name of the purchaser.")

Furthermore, even if the allegedly seized paystubs were in the record, the Fourth Circuit has found that just "$2,500 in cash 'is substantially greater than is commonly kept in residential premises by law-abiding wage earners.'" *United States v. $95,945.18, U.S. Currency*, 913 F.2d 1106, 1111 (4th Cir. 1990) (quoting *United States v. $2,500 in U.S. Currency*, 689 F.2d 10, 16 (2d Cir. 1982), *cert. denied sub nom. Aponte v. United States*, 465 U.S. 1099 (1984)). Given that the defendant currency is well above $2,500 and the other evidence in the record indicating the defendant currency's connection to illegal activity involving controlled substances, the allegedly seized paystubs would not create a genuine issue of material fact sufficient to defeat summary judgment. *See Yelton*, 439 F.3d at 195.

Claimant Coleman asserts that she has a $14,880.00 interest in the defendant currency. (ECF No. 7 at 1.) Claimant Coleman asserts that she "was never involved in drug trafficking in any respects" and that "she always maintained legal employment earning a lucrative salary." (ECF No. 40 at 2.) Claimant Coleman's bank records, (ECF No. 11-3 at 13–24), and estimated monthly expenses, (ECF No. 45 at 12), do not account for the portion of the defendant currency that she claims, and she does not provide documentation of her salary or earnings before she was unemployed, besides her own self-serving declaration. (ECF No. 65-1 at 4.) Claimant Coleman also asserts that she would invest in claimant Perez's used car ventures and eventually kept her money with his money for that purpose. (*Id.* ¶¶ 8–9.) Although claimant

21

Coleman's statements align with claimant Perez's with respect to providing money for the used car business, there is no other support in the record that substantiates these claims besides claimants' self-serving affidavits. (*Id.* at 2–4.) "The mere allegation of a highly unlikely legitimate source of income without some support to give the allegation credibility cannot constitute an issue of material fact defeating summary judgment for forfeiture." *United States v. $10,000 in U.S. Currency*, 348 F. Supp. 2d 612, 617 (M.D.N.C. 2004) (citation omitted). The Court finds that these declarations do not create a genuine factual dispute.

In addition, the record reflects that both claimants maintained bank accounts from which they paid expenses, (ECF No. 11-3 at 12–24), which undermines the likelihood that they would have needed to keep over $25,000 in cash in their residence. The Fourth Circuit has held that where a claimant's "verifiable income cannot possibly account for the level of wealth displayed and where there is strong evidence that the defendant is a drug trafficker, then there is probable cause to believe that the wealth is either a direct product of the illicit activity or that it is traceable to the activity as proceeds." *Thomas*, 913 F.2d at 1114 (citation omitted).

Finally, with respect to claimant Coleman, viewing the evidence in the light most favorable to claimants, the Court cannot reasonably infer that claimant Coleman elected to keep her funds with claimant Perez's and was not aware, at least to some degree, of claimant Perez's illegal activity. Claimant Coleman cannot claim willful blindness to escape forfeiture, as other courts within this circuit have found.

> Although there is no evidence in this case that Mrs. Dixon was involved in Mr. Dixon's drug trafficking, it is clear he was actively dealing and storing a considerable amount of drugs and money in their residence. Mrs. Dixon states she knew about the money and consented to her husband storing it in a bag in the love seat in their bedroom, but she claims all the money was from legitimate sources, gifts, earned income, and tax returns. As stated by this Court at the sentencing hearing, however, the evidence shows it is highly implausible that Mr. and Mrs. Dixon would have been able to save such a

22

large amount of money given their very limited income and their normal living expenses for themselves and their four children. In addition, officers confiscated scales and other drug paraphernalia during the search, and Mr. Dixon was already on home confinement for a previous state conviction for drug distribution. Given these facts, the Court finds it very difficult to believe Mrs. Dixon did not know about her husband's illegal activities, and the Court finds she has failed to show by a preponderance of the evidence that she is an innocent owner under § 983(d)(2)(A)(i). Likewise, there is no evidence she took any steps under subsection (ii) to terminate the illegal use of the money. *See, e.g.*, *United States v. One Parcel of Property Located at 755 Forest Road*, 985 F.2d 70, 72 (2d Cir.1993) (stating "where an owner has engaged in 'willful blindness' as to activities occurring on her property, her ignorance will not entitle her to avoid forfeiture" (citation omitted)). Thus, the Court finds Mrs. Dixon is not entitled to any of the funds.

*United States v. $20,560, More or Less, in U.S. Currency*, Civil Action No. 3:08-0892, 2010 WL 3702590, at *3 (S.D.W. Va. Sept. 13, 2010).

Thus, the Court finds that claimants have not established the innocent owner defense by a preponderance of the evidence.

Therefore, the Court finds by a preponderance of the evidence that the defendant currency is either proceeds of, or traceable to, criminal activity involving controlled substances, and further finds that there is no genuine dispute as to any material fact. The Court concludes that the defendant currency is subject to civil forfeiture as a matter of law.

For the reasons stated herein, the Court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that claimants' Motion for Relief from Order and Judgment, (ECF No. 58), is **DENIED**.

**IT IS FURTHER ORDERED** that the Government's Motion for Summary Judgment, (ECF No. 59), is **GRANTED** and Defendant Currency shall be and is hereby, forfeited to the United States of America pursuant to 21 U.S.C. § 881(a)(6).

This, the 9th day of November 2023.

/s/ Loretta C. Biggs
United States District Judge